## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | | |
|---|---|---|
| **RYAN JONES, et al.** | § | |
| *PLAINTIFFS*, | § | |
| | § | **Case No.  3:23-cv-0065** |
| **V.** | § | **Jury Demanded** |
| | § | |
| **CITY OF LAMARQUE, et al.** | § | |
| *DEFENDANTS.* | § | |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiffs respectfully come before this Honorable Court pursuant to 42 U.S.C. §1983 and Texas Wrongful Death and survivorship statute, pursuant to 42 U.S.C. §1988. This is an action brought by Plaintiff Ryan A Jones, individually and on behalf of the  heirs of Joshua Feast as beneficiaries of Joshua Feast's survival claims deceased, complaining through plausible, detailed, and specific facts that defendants Jose Santos and Chief  Jackson acted under color of state law and unreasonably deprived Joshua Feast,  deceased, of his clearly established rights secured by the United States Constitution,  Fourth, and Fourteenth Amendments, to remain free from unreasonable seizure and injury against Defendants City of La Marque, Jackson, and Jose Santos. Plaintiffs specifically allege the following:

## I. INTRODUCTION

1.        This civil rights and state tort action seeks compensatory and punitive damages from defendants for violating various rights under the United States Constitution in connection with the fatal officer-involved shooting death of Plaintiff's son, Mr. Joshua Feast ("Joshua"), on December 9, 2020.

2.      The homicide of Joshua Feast at the hands of Jose Santos was preventable. Santos was negligently hired and not properly supervised, trained, or disciplined by La Marque Police Department.

3.      He was specifically untrained in the use of deadly force.

4.      There have been many instances of Santos' use of force against citizens without provocation in the past before the encounter with Joshua Feast.

5.      La Marque Police Department Officer Jose Santos shot Joshua Feast in the back at close range and killed Mr. Joshua Feast without lawful justification.

6.      Joshua was not a threat of harm to Santos or anyone when the violent homicide occurred.  Joshua never pointed a weapon at Santos or anyone. Joshua Feast never pulled a semi-automatic handgun from his waistband. Officer Santos never confronted him and identified himself as an officer.

7.      Officer Santos concealed information during the encounter by muting the microphone on his body-worn camera.

8.      Santos shot Joshua in the back as Joshua ran away, and his back was turned.

9.      After Josh fell to the ground, Santos kicked Joshua for no reason and failed to render aid. He did not call for emergency services.

10.     It took neighbors to call for aid, but it was too late because Joshua had bled out.

11.     Since no pressure was placed on Joshua's wounds to stop the young father the shot was fatal. His child's mother witnessed the shooting resulting in her mental anguish. Officer Santos stalked and harassed Joshua Chief Jackson

***Santos's Past Unlawful Acts***

12.    Before Defendant Santos shot Joshua Feast--a 22-year-old son and young father, Joshua was parked. Joshua committed no crimes at all. He poses no immediate threat of harm.

13.    Because of his status as a police officer, the district attorney's office held Defendant Jose Santos accountable for his actions. Although grand jury proceedings commenced against Jose Santos based on the Galveston County District Attorney's reasonable suspicion that Santos committed a crime related to the shooting, the grand jury no billed him.

14.    Santos remained with the La Marque Police department and was promoted to sergeant.

15.    Jose Santos was on fair notice that his conduct in shooting Joshua in the back as he fled on December 9, 2020, was unlawful based on the situation Santos confronted, a non-threatening citizen who was running away and did not disregard any complaints, under Tennessee v. Garner, 471 U.S. 1(1985).

16.    Clearly established law prohibited Jose Santos from using deadly force by shooting Joshua in the back as he ran from the scene.

17.    Rules that prohibited Jose Santos from shooting Joshua in the back. The City of La Marque gave Jose Santos a promotion related to the killing of Joshua.


***Santos's Past Unlawful Acts against Reginald Deon Davis***

18.    Tragically, the shooting of Joshua Feast was not an isolated excessive force incident by Santos.

19.    Before joining the La Marque police department, Santos was an officer with the Galveston police department but was forced to resign as a result of his use of excessive force against a citizen,

20.    On March 19, 2013, Santos tasered and beat Mr. Davis after officers chased him onto the beach, discharged his Taser, striking Mr. Davis in the back and knocking him to the ground. Mr. Davis stumbled to his feet before quickly being tackled by Officer Santos, who held Mr. Davis face down on the sand at the edge of the water. and forcibly submerged his head in the tide while kicking him in the head. A video taken from a police dash camera captured those events. It showed that Officer Santos was able to restrain Mr. Davis, who is seen lying on his stomach and does not appear to resist until a wave from the rising tide submerges his face underwater, and it becomes clear that he is in fear of drowning. Santos struck Mr. Davis's head numerous times with his fists.

21.    During this entire incident, Mr. Davis can be heard yelling, 'I can't breathe' and 'You're trying to drown me.' While beating him, Santos intentionally falsely accused Mr. Davis of resisting to justify the unreasonable use of force. Still, the video captured what was actually occurring that Mr. Davis was forced to resist to avoid drowning from his head being forced underwater. Pictures of Mr. Davis after his arrest show significant bruising and swelling to his face, and his arm, which was visibly injured prior to his arrest, appears to have been put in a sling.

***Santos's Past Unlawful Acts against Demarcus Chatmon***

22.     On or about November 18, 2014, Demarcus Chatmon, an African- American male, was a passenger in a vehicle. La Marque police Department officer Jose Santos stopped the vehicle. Chatmon was ordered to get out of the vehicle. As he complied with

23.     Santos' order and exited the vehicle, Chatmon was viciously attacked by Santos.

24.     He was thrown to the ground and brutally pushed, punched, and kneed. Santos shot Chatmon with a taser and applied pressure to Chatmon's back with his knee. Chatmon could not breathe. During the beating, Mr. Chatmon lost several teeth as a result of the attack. Mr. Chatmon was also not a threat to Santos or anyone else, just as with Santos's other victims.

25.     After leaving the Galveston County police department, La Marque Police department hired Santos despite his history of violating the civil rights of Mr. Davis and Chatmon and Santos attempting to kill them both.

***The City of La Marque has a rash of police-involved shootings where officers have not been disciplined by its chief of police Chief Kirk Jackson.***

26.     In the past, on December 4, 2017, before the 2020 use of deadly force on Joshua Feast, LMPD officer Santos killed a senior citizen, Gregory Ray Ham, a 67- year-old white male. Santos alleged Mr. Ham was a threat to him, but his body-worn camera footage contradicts his representation that the senior was a threat. Nonetheless, Santos Shot and killed Mr. Ham at close range without warning, as was the case with Joshua 3 years and four days later.

27.     No officer was terminated or disciplined in any of the named instances and disputed the dishonest and contradicting accounts by Chief Kirk Jackson, who reviewed Santos's

actions that allegedly caused him to use excessive force and adopted those actions by excusing them, failing to discipline Santos, and promoting Santos.

28.    The City of La Marque, through its policymaker, Chief Jackson, and its city council, has ratified this conduct by its officers, including Santos, by either doing nothing or awarding as they did Jose Santos, a promotion in direct

29.    connection with the shooting of Joshua. And, like Defendant Santos, the City has not been held accountable for its actions (and inactions) concerning the shooting of unarmed individuals by its officers.

30.    This action, brought under 42 U.S.C.§1983, seeks justice and accountability for the wrongful, unjustified killing of Joshua and seeks to deter the practice of wrongful, unjustified shootings of others at the hands of the La Marque Police Department. 25. Decedent Mr. Joshua Feast was an individual residing in the City of La Marque, Texas.

31.    The City of La Marque failed to submit a custodial death report.

## II. PARTIES AND SERVICE

1.    **Plaintiff Ryan A Jones** is an individual residing in the City of La Marque, Texas, and is the natural father of Joshua Feast. Mr. Jones uses both in his individual capacity as the son of Joshua and a representative capacity as an administrator of the Estate of Joshua pursuant to Texas Estate Code §301. Joshua seeks both survival and wrongful death damages under federal and state law.

2.    **Plaintiff, The Heirs and Estate of Joshua Feast** represent the property and legal interests of Joshua Feast.

3.      **Defendant, the City of La Marque ("City"),** is and was a duly organized public entity existing under the laws of the State of Texas. A city is a chartered subdivision of the State of Texas with the capacity to be sued. City is a Texas municipal corporation that operates the La Marque Police Department (the "LMPD " or "Department"), which in turn sets city-wide policy for police officers employed by the Department. The city is responsible for the actions, omissions, policies, procedures, practices, and customs of its various agents and agencies, including the City of La Marque Police Department and its agents and employees. At all relevant times, Defendant City was responsible for assuring that the actions, omissions, policies, procedures, practices, and customs of the City of La Marque Police Department and its employees and agents complied with the laws of the United States and of the State of Texas. The City of La Marque, Defendant, is sued in its official capacity and subjected to monetary damage claims under 42 U.S. C.§ 1983 because its official policy or custom caused Joshua, Sr., to be deprived of state[1] and federally protected rights. At all relevant times, City was the employer of Defendant Jose Santos.

4.      **Defendant, Jose Santos** is a police officer working for the City of La Marque Police Department after the City of La Marque negligently hired him despite his violation in the past. The officer defendant was acting under the color of law in his individual capacity as an LMPD officer.  At all relevant times, the officer defendant acted with the complete authority and ratification of their principal, Defendant City of La Marque. In 2014, Jose Santos was hired by La Marque Police after being terminated by the Galveston Police department after trying to kill and violate the rights of another individual.

5.      **<u>Defendant, Chief Kirk Jackson,</u>** works for the City of La Marque Police Department as the chief of police, and final policymaker for The City of LaMarque. The officer defendant was acting under the color of law in his individual capacity as an LMPD officer. At all relevant times, the officer defendant acted with the complete authority and ratification of their principal, Defendant City of La Marque.

## III. JURISDICTION AND VENUE

6.      This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1343(a) (3)- (4) because the Plaintiffs assert claims arising under the laws of the United States, including 42 U. S. C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution and supplemental jurisdiction for all state law claims.

7.      The venue is proper under 28 U.S.C. §1391(b) because Defendants reside in this Southern District of Texas Galveston Division. All incident events and occurrences giving rise to this action occurred in this district.

## ADDITIONAL FACTS

8.      This is a civil rights action brought by Ryan Jones on behalf of himself and the heirs of his son, Mr. Joshua Feast, for damages for violation of constitutional rights based on Fourth and Fourteenth Amendment violations and Equal Protection and Texas Law wrongful death and survivorship.

9.      On December 9, 2020, Joshua had the clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from excessive force, illegal search and seizure, and to be free from illegal arrest[2].

10.     Officer Santos approached Joshua Feast at night, but Santos did not identify himself as a police officer; he did not have his lights or sirens activated.

11.     He never identified Joshua before shooting him.

12.     Santos never commanded Joshua to stop running or warn that he was being detained and would be shot.

13.     Joshua did not have a gun on his person when he ran from the truck that he was leaning into and talking to his child's mother and was unarmed.

14.     Joshua was not engaged in any criminal conduct.

15.     Importantly Joshua was not committing a felony when he fled from the unidentified Santos.

16.     There was no warrant from Galveston County for Joshua's arrest when homicidal conduct driven by "roid rage" against the young African American man simply because he was African American occurred by Santos.

17.     Santos is known in the community for his steroid-driven conduct that manifests in the form of aggression and violence.

18.     The predominantly Black community was policed by officers of the LMPD on December 9, 2020. LMPD has a history of racial profiling, according to public records and required reporting statistics.

19.     Joshua Feast was stopped because of his race, and Santos's use of deadly force against Joshua was unjustified and unlawful in violation of the equal protection clause under the 14th amendment.

20.    Defendant Santos's stop of Joshua Feast on account of his race and Santos' decision to shoot and kill Joshua Feast.

21.    Santos fired at Josh once in the back as Josh ran away from the unidentified stranger.

22.    Joshua was not given a verbal warning by Santos before the shooting that Santos would fire his weapon.

23.    Joshua never threatened Santos or posed an immediate threat of harm to the safety of Officer Santos or anyone.

24.    Joshua never made a provocative gesture towards Santos.

25.    Joshua never pointed a gun or anything toward Santos.

26.    Officer Santos had the time and opportunity to give a warning to Joshua.

27.    Upon contacting Joshua, Santos unholstered his weapon but did not have his emergency lights and sirens turned on or identify himself as a police officer.

28.    Joshua did not have a gun in his pocket, and no gun belonging to Joshua was found on his person at any time.

29.    Joshua dropped the weapons he had long before Santos shot him in the back, as Santos acknowledged that Joshua had dropped the weapon the moment he ran from the car.

30.    After Officer Santos fatally shot Joshua in the back.

31.    Life-saving measures were not applied to Joshua.

32.    Defendant Santos failed to provide medical aid to Joshua after he shot Joshua in the back before the EMS arrived on the scene.

33.    Joshua was unarmed when he was shot.

34. Officers Jose Santos lied about what happened and reported Joshua pointed a weapon at him and fabricated evidence.

35. In spite of the fact that the statement conflicted with the video body-worn camera evidence, The City of La Marque chief Jackson ratified Santos's action rather than disciplining Santos.

36. Despite being aware of the contradictions involving the death of Joshua, The City of La Marque awarded Santos a pay increase and promotion after he killed Joshua.

37. The City of La Marque promoted Jose Santos after the other acts of excessive force against others prior to shooting and killing Joshua.

38. To that end, Defendant Santos was wearing his Department-issued uniform, an LMPD badge or insignia, armed with his service weapon, and acting in full capacity as a La Marque Police Department officer.

39. Officer Santos racially profiled Joshua as he has in the past. Santos approached Joshua with guns pointed.

40. Joshua was not told the purpose of the encounter. He was met with Santos and the barrel of Santos's gun.

41. Joshua ran for his life, rightfully so.

42. Joshua did not make an overt act toward Santos with a weapon.

43. Santos did not employ any de-escalation techniques during the illegal stop; due to a lack of or poor training in de-escalation.

44. Jose Santos knew Joshua did not pose a threat of harm to him or others. Jose Santos chose to impose a death sentence on Joshua.

45.     In the wake of this unjustified shooting, Joshua did not die immediately. In these moments, Joshua experienced unspeakable pain due to the gunshot wounds to his back.

46.     He was moaning from the conscious pain and suffering.

47.     Adding insult to fatal injury-Defendant Santos handcuffed Joshua. He was left to die.

48.     City of La Marque LMPD officials have established a custom of condoning lethal use of force by ruling all intentional shootings to be justified - even when an officer's statements conflict with other evidence or independent witness accounts.

49.     The City's refusal to supervise its officers' use of force amounts to deliberate indifference. After the shooting, Defendant Santos falsely told authorities and investigators he shot Mr. Joshua Feast because he pointed a weapon at him while running away and pointing the gun backward toward him. After Joshua was fatally wounded, Santos stated Joshua had dropped his gun. Joshua dropped his gun before Santos shot Joshua for running away from him.

50.     LMPD claimed to have found a weapon of an unknown type that fell from Joshua's person while in the ambulance, but obviously, the weapon was not discovered or used to threaten Santos. The gun was identified as the same one held in evidence from another crime.

***The City of La Marque Promoted Santos ad Failed to Discipline him for the shooting or untruthfulness surrounding the events involving Joshua's death.***

51.     Despite all of the inconsistencies and implausible versions of events provided by Defendant Santos, his employer--the City of La Marque- failed to discipline Defendant Santos in any meaningful way.

52.     Indeed, the City of La Marque did not terminate Santos in the wake of the shooting and killing of Joshua or after the use of force against others leading up to the killing of Joshua, and the failure to discipline was the moving force behind the constitutional violation against Joshua.

53.     He knew he would not be disciplined and would be protected from any discipline, including being criminally charged. The city of La Marque never treated Santos as a murder suspect.

54.     Instead, records indicate that Defendant Santos continued his employment after the killing and was awarded. The City of La Marque Ratified and condone the conduct of Santos.

55.     Jose Santos was awarded a certificate in the past after his use of unnecessary excessive force and continues his role as a gypsy cop. Santos was also promoted to Sargent at the La Marque Police Department.

56.     By reason of the aforementioned acts and omissions, the Plaintiffs have suffered the loss of life, loss of love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Joshua.

57.     The aforementioned acts and omissions also caused Joshua's conscious pain and suffering, loss of enjoyment of life, and death.

## CLAIMS:

## FIRST CLAIM FOR RELIEF

**Unreasonable Search and Seizure-Detention and Arrest-42 U.S.C.§ 1983 Against Jose**

**Santos and Chief Kirk Jackson**

58.    Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

59.    There was no reasonable suspicion and certainly no probable cause to believe that Joshua had committed any crimes or to stop Joshua.

60.    Joshua was not a fleeing felon.

61.    Santos was working as a police officer for the City of La Marque Police Department and, acting with the course and scope of their duties, acted intentionally. Defendants Santos and Jackson acted without lawful authority and the Plaintiffs' consent; Defendant Santos' act resulted in the direct restraint of Joshua's liberty or freedom of movement by actual force inflicted on Joshua.

62.    Santos is liable for Joshua's injuries. The conduct of Officer Santos was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Joshua, entitling the Plaintiffs to an award of exemplary and punitive damages.

63.    Plaintiffs bring this claim individually and as heirs and administrators of the Estate and seek survival and wrongful death damages under this claim. Plaintiffs also seek attorney's fees under this claim.

**SECOND CLAIM FOR RELIEF**

**Unreasonable Search and Seizure-Excessive Deadly Force-42 U. S. C. § 1983 Against**

**Jose Santos**

64.     Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

65.     Defendant Santos used unreasonable force against Joshua when he fired his weapon and shot Joshua in the back because Joshua ran away from Santos.

66.     Santos used unreasonable force, and Joshua was harmed and ultimately died after he lost too much blood.

67.     Defendant Santos's action of shooting Joshua in the back because he ran from him violated Joshua's constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution. Santos failed to

68.     render aid, denying Joshua medical care for his serious medical needs.

69.      The misconduct described in this claim shooting an unarmed Joshua in his back because he ran, was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others.

70.     Joshua was not committing a crime. He posed no immediate threat to the safety of the officer or the public, did not resist arrest, was not dangerous, and no exigent circumstances existed at the time of the stop, and he was non-resistant.

71.     Joshua was an unarmed citizen when he was shot. In addition, the misconduct and excessive force described in this claim "shocks the conscience."

### THIRD CLAIM FOR RELIEF

### Unreasonable Search and Seizure-Denial of Medical Care-42 U.S.C. §1983 Against Jose Santos

72.     Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

73.     After Joshua was shot in the back, he fell to the ground, and he was bleeding, moaning, groaning from pain, and in obvious and critical need of emergency medical care and treatment Santos provided no medical aid and left Joshua Feast to bleed out and die.

74.     Rather than treating Joshua immediately or calling for medical personnel or EMS to treat his injuries that resulted from the gunshot wounds Defendant, Officer Santos used additional unreasonable force and kicked and handcuffed Joshua, pursuant to the City of La. Marque Policy.

75.     The denial and delay of medical care to Joshua caused Joshua extreme physical and emotional pain and suffering and was a contributing cause of Joshua's death.

76.     The denial of medical care by the officers, Santos deprived Joshua of the right to be secure in his person against unreasonable searches and seizures as guaranteed to Joshua under the Fourth Amendment to the United States Constitution. He applied to state actors by the Fourteenth Amendment.

77.     Joshua was more likely than not frightened, suffered conscious pain and suffering, great physical pain and emotional distress up to the time of his death, and also suffered the loss of enjoyment of life, loss of life, and loss of earning capacity.

78.     Officer Santos knew that failure to provide timely medical treatment to Joshua could result in further significant injury or the unnecessary and wanton infliction of pain. Still, he disregarded that serious medical need, causing Joshua great bodily harm and death.

79.     The conduct of the officer defendant, Santos, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Joshua and therefore warrants the imposition of exemplary and punitive damages to the officer defendants.

80.     As a result of their misconduct, the officer defendants,The City of La Marque, Santos and Jackson, are liable to the Plaintiffs for Joshua's injuries, either because they were integral participants in the denial of medical care or because they failed to intervene to prevent these violations.

## FOURTH CLAIM FOR RELIEF

### Equal Protection-42 U.S.C. §1983

### Against City of La Marque, Jose Santos and Kirk Jackson

81.     Plaintiffs adopt and incorporate by reference each and every factual allegation throughout the complaint as though fully set forth herein.  In the manner specifically described in this complaint, Defendant Santos violated Joshua's constitutional rights by intentionally subjecting him to unlawful, unequal treatment based on his race, black, in violation of the Fourteenth Amendment of the United States Constitution.

82.     Defendant Santos' conduct created discriminatory effects by targeting Joshua for police action based on his race, and gender, a Black male. Santos made contact with Joshua simply because he was a Black male. The contact was not due to a traffic stop, or while Joshua was in the commission of a crime but because he was an unidentified Black Male.

83.     The misconduct described was objectively unreasonable and was undertaken intentionally with willful indifference to Joshua's constitutional rights.

## SEVENTH CLAIM FOR RELIEF

**Wrongful Death and Survival- 42 U.S.C. §1983, 1988, and Tex. CPRC §71.002- 71.021**

**Against City of La Marque, and Jose Santos and Kirk Jackson**

84.        Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

85.    Defendant Santos's actions toward Joshua violated his constitutional rights and wrongfully caused the death of Joshua, and without those actions, the death of Joshua would not have occurred.

86.    Mr. Ryan Jones and Joshua Feast's heirs suffered from pecuniary loss as a result of the wrongful death of Joshua. Joshua's mother, LaKeisha Feast, children, and child's mother, having bystander liability also, suffered a loss of companionship and mental anguish as a result of the wrongful death of Joshua and a violation of their right to familial relationships under the fourteenth amendment..

### *Survival Action*

87.        Defendant Santos' actions toward Joshua violated Joshua's constitutional rights and wrongfully caused the death of Joshua Feast, Sr.

88.    Before his death, Joshua suffered serious personal injuries, including but not limited to severe pain and emotional distress during the period after he was shot, but before he died from the gunshot wounds Defendant Santos inflicted upon him.

89.     Plaintiff, the Estate of Joshua Feast, which includes his heirs, has standing to assert this claim pursuant to Tex. Civ. Prac. & Rem. Code Section §71.0004(a) through 42 USC 1988.

## EIGHTH CLAIM FOR RELIEF

## 42 U.S.C. §1983-Municipal Liability:

## Monell And Negligent Hiring against the City of La Marque

90.     Plaintiff adopts and incorporates by reference each and every factual allegation throughout the complaint as though fully set forth herein.

91.     As described in the preceding paragraphs, the misconduct described was undertaken under the policy and practice of the City of La Marque through its Chief of police Kirk Jackson, such that Defendant City of La Marque is also liable, in that:

92.     As a matter of both policy and practice, the City of La Marque encourages and is thereby the moving force behind the very type of misconduct at issue in the foregoing.

93.     paragraphs by failing to adequately train, supervise, control, and discipline its officers such that its failure manifests deliberate indifference;

94.     b. As a matter of both policy and practice, the City of La Marque facilitates the very type of misconduct at issue in the preceding paragraphs by failing to adequately investigate, punish, and discipline prior instances of similar misconduct, thereby leading La Marque police officers to believe their actions will never be meaningfully scrutinized. Accordingly, in that way, the City of La Marque directly encourages future uses of excessive deadly force, unlawful detention, failures to intervene, and race-based policing and discrimination against the mentally ill such as that Plaintiff complains of. Generally, as a matter of widespread

practice so prevalent as to comprise municipal policy, officers of the La Marque Police Department violate the constitutional right of individuals in a manner similar to that alleged by Joshua in this complaint regularly, yet the La Marque Police Department investigates officer misconduct and makes findings of wrongdoing in a disproportionately small number of cases.

95.    As a result of the City of La Marque's policies and practices and the unjustified and unreasonable conduct of Defendant Santos, Plaintiff has suffered injuries, including severe emotional distress and, ultimately, death.

96.    The City of La Marque has ratified each use of deadly force by its officers as demonstrated through its actions after the use of deadly force.

97.    Chiefs of Police Jackson, as the City of La Marque, has ratified its officers' conduct in nearly every case of the use of deadly force by its officers.

98.    Santos did a "walk-through" of the crime scene. The walk-through consisted of Defendant Santos walking through the scene and explaining where certain things had happened.

99.    No gun was pulled out of Joshua's waistband or pointed at Santos at any time.

100.    Santos shot Joshua because Joshua ran from him.

101.    Upon review of the unreliable adulterated spoiled body cam video footage removing the audio from the publicly released video, it still shows that Santos shot Joshua in the back. At the same time, Joshua Feast was never a threat of imminent harm to Santos or anyone else.

*The final policymaker determined that the acts of the officer defendants were*
*"within policy."*

102.    Kirk Jackson, the LMPD Chief of police and policymaker for the City of la Marque, in the area of law enforcement, with the support of La Marque City Council, has not found the discipline for the use of force by one of his officers.

103.    The City of La Marque may be liable if its policymakers condone or otherwise adopt the creation of a custom by knowingly ratifying the illegal or unconstitutional actions of subordinate, non-policymaking employees.

104.    The use of force as justified by the Chief of Police, the absence of immediate danger, and the use of force by Santos were not justified because Joshua did not point a weapon at Santos or place Santos or anyone else in threat of danger of harm.

105.    The officers engaging in unreasonable use of deadly force in LMPD have not been disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with

106.    Joshua's death or prior to the death involving the death of any others leading up to the death of Joshua.

107.    Because of the aforementioned acts and omissions, the Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Joshua. The aforementioned acts and omissions also caused Joshua's pain and suffering, loss of enjoyment of life, and death.

108.    The officer defendants acted pursuant to an expressly adopted official policy or a longstanding practice or custom of the defendant, City of La Marque of failing to disciple and protect the actions of officers who use excessive force.

109.    The officer defendants were not disciplined, reprimanded, retrained, suspended, or otherwise penalized regarding Joshua's death.

110.    Defendants City and the officer defendants, together with. other city policymakers and supervisors maintained, inter alia, the following unconstitutional customs, practices, and policies

111.    The unconstitutional customs, practices, and policies, in addition to the ratification of the deficient customs, practices, and policies, are evidenced by the number of prior cases involving the use of deadly force against an unarmed person by a police officer working for the City. When the injuries result from the execution of a governmental policy the acts here may be fair to be said to represent official policy.

112.    Because of the aforementioned acts and omissions, the Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Joshua. The aforementioned acts and omissions also caused

113.    Joshua's pain and suffering, loss of enjoyment of life, and death.

114.    Defendants City and officers and various other officials, whether named or unnamed, had either actual or constructive knowledge of the deficient policies, practices, and customs alleged in the paragraphs above.

115.    Despite knowing, as stated above, these defendants condoned, tolerated, and through actions and inactions, thereby ratified such policies. Said defendants also acted with deliberate indifference to the foreseeable effects and consequences of these policies with respect to the constitutional rights of Joshua, the Plaintiffs, and other individuals similarly situated.

116.    By perpetrating, sanctioning, tolerating, and ratifying the outrageous conduct and other wrongful acts, Officer Santos acted with intentional, reckless, and callous disregard for the life of Mr. Joshua Feast and Joshua Feast's and the Plaintiffs' constitutional rights. Furthermore, the policies, practices, and customs implemented, maintained, and still tolerated by the Defendants City of La Marque, Officer Santos and Jackson were affirmatively linked to and were a significantly influential and moving force behind the injuries of Mr. Joshua Feast and Plaintiff.

***Failure to Train, Discipline, and Supervise***

117.    Plaintiffs adopt and incorporate by reference each and every factual allegation throughout the complaint as though fully set forth herein.

118.    The officer defendants acted under the color of law.

119.    The acts of the officer defendants deprived Joshua and Plaintiffs of their particular rights under the United States Constitution.

120.    The training policies of Defendant City were not adequate to train its police officers to handle the usual and recurring situations with which they must deal, including with regard to the use of force, de-escalation of the mentally ill, crisis intervention training, and racial profiling, rendering life-saving measures during police-involved shooting and implicit bias.

121.    The Defendant City of La Marque was deliberately indifferent to the obvious consequences of its failure to train its police officers adequately, including with regard to the use of force, and rendering medical aid.

122.    The failure of Defendant City to provide adequate training caused the deprivation of Plaintiff's rights by the Officer defendant; that is, the defendants; failure to train is so closely related to the deprivation of Joshua and the Plaintiffs' right as to be the moving force that caused the ultimate injury, Joshua's death.

123.    By reason of the aforementioned acts and omissions, the moving force behind Joshua Feast's rights being violated and the loss Plaintiffs have suffered the loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Joshua. The aforementioned acts and omissions also caused Joshua's pain and suffering, loss of enjoyment of life, and death.

*Assault and Battery*

124.    Plaintiffs adopt and incorporate by reference each and every factual allegation throughout the complaint as though fully set forth herein.

125.    Santos's actions of shooting Joshua in the back and then chasing and standing over Joshua and kicking him amounts the assault and battery under the laws of the state of Texas.

## IV. PLAINTIFFS' DAMAGES

126.    The Defendants' actions imposed substantial harm on Joshua during the period of time after which Defendant Santos, until Joshua shot him, ultimately passed away. The amount of excruciating pain Joshua felt during those final moments is unquantifiable.

127.    In addition, Joshua's children lost the opportunity to be raised by their father and see their major life events, as did his father lost the opportunity to earn wages based on his

experience; and the ability to see his son graduate from college. These damages are tragic and substantial. 146. Likewise, Joshua's children growing up as young men without a father, Joshua Feast's parents have suffered an immeasurable loss continuing life without their son: Their lives are now and forever altered by the difficulties that the children and their grandparents will face as a result of Joshua's death.

128.    Joshua's parents were close with their son and will never again have this relationship further harms them as a result of the actions taken after the killing due to authorities' failure to hold Defendant Jose Santos accountable for his actions and also by the substantial life changes that they have had to endure in assisting with the guidance for Joshua Feast's children.

129.    Plaintiffs bring their claim as heirs of Joshua's estate and seek survival and wrongful death damages for violating Joshua's rights.

130.    Plaintiff is entitled to recover reasonable attorney's fees and costs to enforce his Constitutional rights under 42 U.S. 1983 and 1988 from the defendants.


**Loss of Consortium**

131.    Each individual heir and plaintiff assert a claim for loss of consortium based upon the action by Santos and the City of La Marque resulting in Joshua Feast Sr.'s death.

132.    Plaintiffs request entry of judgment in their favor and against Defendants City of La Marque, Jose Santos, and Chief Jackson inclusive, as follows:

a. For compensatory damages, including both survival damages and wrongful death damages under federal and state law, in the amount proven at trial;

b. For fright, loss of life, loss of liberty, funeral and burial expenses, and loss of companionship and financial support;

c. For punitive damages against the individual defendants in an amount to be proven at trial; For loss of consortium;

d. For prejudgment and post-judgment interest;

e. For reasonable attorney's fees, including litigation expenses; For costs of suit ;

f. For emotional distress, and mental anguish up to the time of his death;

g. For loss of enjoyment of life;

h. For deprivation of physical liberty, security, and loss of life;

i. For pre-death pain and suffering and loss of earning capacity.

For such further other relief as the Court may deem just, proper, and appropriate.

Respectfully submitted,
/s/U. A. Lewis
U. A. Lewis
State Bar No. 24076511
Federal Bar No. 1645666
P. O. Box 27353
Houston, TX 77227
Telephone: (713)570-6555
Facsimile: (713) 581-1017
ATTORNEY FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been forwarded to all parties by ECF electronic filing service on March 21, 2023.

/s/ U.A. Lewis

U.A. Lewis